Argued December 19, 1917, affirmed January 22, 1918.

## MORATA v. OREGON–WASH. R. & N. CO.*

(170 Pac. 291.)

**Appeal and Error—Denial of Nonsuit—Review.**

1. On assignments of error directed wholly to denial of defendant's motions for nonsuit and directed verdict, the only question is whether, viewing the evidence in the light most favorable to plaintiff, it warranted the judgment.

**Master and Servant—Injury to Servant—Failure to Warn—Evidence.**

2. In an action by a trackman for injuries based on defendant railroad's negligence in failing to give warning of approaching train, *held*, under evidence, that jury was authorized to infer that no whistle was sounded.

**Master and Servant—Injury to Servant—Duty to Warn.**

3. Where defendant railroad's employees saw plaintiff at work on a switch when the train was about a third of a mile away, it was their duty to sound the whistle or ring the bell, the weather being cold and windy, so that plaintiff had his cap pulled down over his ears.

**Master and Servant—Injury to Servant—Contributory Negligence—Sufficiency of Evidence.**

4. In an action by a trackman for injuries based on defendant railroad's negligence in failing to give warning of approach of train, *held*, under evidence, that jury was entitled to infer that plaintiff had no knowledge of the approach of the train prior to the accident.

**Master and Servant—Injury to Servant—Federal Employers' Liability Act—Contributory Negligence.**

5. Where the track on which plaintiff was working was used by defendant railroad in interstate commerce, plaintiff was within the protection of Act Cong. April 22, 1908, Chapter 149, Section 3, 35 Stat.

---

*On duty of railroad company to warn track employees of approach of train or car, see comprehensive note in L. R. A. 1916F, 555.

Reporter.

66 (U. S. Comp. Stats. 1916, § 8659), and his contributory negligence would not bar recovery.

**Master and Servant—Injury to Servant—Assumption of Risk—Custom.**

6. Under Act Cong. April 22, 1908, Chapter 149, Section 4 (U. S. Comp. Stats. 1916, § 8660), as to assumption of risk, where a trackman working on a track used in interstate commerce was run down by a train which gave no warning, recovery could not be defeated on theory of assumption of risk in the absence of evidence of a custom, of which he had knowledge, to operate trains without giving warning.

[As to assumption of risk under Federal Employers' Liability Act, see note in **Ann. Cas.** 1915B, 481.]

From Multnomah: GEORGE N. DAVIS, Judge.

Action by Lorenzo Morata against the Oregon-Washington Railroad & Navigation Company, a corporation. From a verdict and judgment thereon in favor of plaintiff, defendant appealed. Affirmed.

Department 2. Statement by MR. JUSTICE MC-CAMANT.

This is an action brought to recover damages for a personal injury sustained by plaintiff on December 31, 1915. At that time plaintiff had been in the employ of the track department of the defendant for approximately fifteen months. Prior to December 31st it had been snowing and early on the morning of that day plaintiff had been ordered to clean away the snow from a switch at the west end of the passing track at Bacon, a station in Union County between Union Junction and Telocasset. He began work a few minutes after 7 o'clock in the morning and was injured between 7:30 and 8. The wind was blowing from the east and the weather was cold. Plaintiff's cap partially covered his ears and may have impaired his hearing. In the performance of his work he was required to bend over and was facing westerly. While in this position a train consisting of a rotary snow-plough, tender and caboose backing downhill ran into

him and caused the injuries of which he complains. Plaintiff testifies that when he was hurt he was standing with one foot on the end of the tie and the other foot on the ground. He testifies that he could have seen the train at a distance of half to three quarters of a mile from the place of the accident; that generally he was looking every few minutes. A light engine had passed in a westerly direction at about 7:15. Plaintiff testifies that he did not expect any other train in the same direction so soon thereafter, but that he had looked in an easterly direction from three to five minutes before he was hurt. Negligence is charged against the defendant based on its alleged failure to keep a lookout on the train and to give warning of its approach. The defendant pleads affirmatively contributory negligence and assumption of risk. Plaintiff recovered judgment in the court below. Defendant appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. W. A. Robbins* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Robbins.*

For respondent there was a brief and an oral argument by *Mr. Edward J. Brazell.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

1. The assignments of error are directed wholly to the denial of defendant's motions for a nonsuit and for a directed verdict. In speaking of a motion for a directed verdict, Mr. Justice WOLVERTON says, in *Stager* v. *Troy Laundry Co.,* 41 Or. 141, 143 (68 Pac. 405):

"Like a motion for a nonsuit, or a demurrer to the evidence, it admits everything to be true that the testi-

mony legally tends to prove, ascribing to every statement of fact in evidence absolute credence; so that if there is testimony in the case from which the jury can, by application of intelligent and reasonable deduction, fairly and legitimately infer the fact in issue, the jury are to determine the matter, notwithstanding other evidence may have been adduced in direct conflict therewith.''

The foregoing principles have been many times affirmed by this court. The question to be decided is whether, viewing the testimony in the light of the above principles, we can say as a matter of law that the evidence fails to charge the defendant with negligence or that the evidence makes out one or both of the affirmative defenses set up in the answer.

There is no evidence whatever to sustain the charge that the defendant failed to maintain a lookout as the train in question approached the place where plaintiff was working. All the evidence is to the contrary.

The defendant's witnesses testify that the whistle was blown one or more times as the train approached plaintiff, and the defendant contends that no inference to the contrary is to be drawn from plaintiff's evidence. Plaintiff testified by the aid of an interpreter and his testimony therefore appears in the record in the third person. He testifies in part as follows:

''Q. Was any warning given of the approach of that train?

''A. No, sir,—he heard no warning at all,—the first train that went by,—that light engine blew a whistle,—and when he heard the whistle blown he just got away,—but this second one,—the only thing he remembers,—he got struck by this train and fell down,—and that is all he can remember,—and he don't remember anything else.''

''Q. Did you see any part of the train that struck you?

"A. No, sir,—he didn't see nothing at all.

"Q. Is your hearing good?

"A. Yes, sir.

"Q. Can you hear a locomotive whistle when one is sounded?

"A. He says that just the same way that he heard the whistle of the first engine that went by just fifteen minutes before he could have heard this one if it had whistled.

"Q. Well, now, if you can hear this snow plow coming for six or eight yards, why didn't he hear it on this day?

"A. He says that if the engineer had blown a whistle he would have heard it about a mile or two miles away,—and that he would have gotten out of the way."

2, 3. The jury was entitled to infer from this evidence that the whistle was not blown: *Smith* v. *Southern Pacific Co.*, 58 Or. 22, 33 (113 Pac. 41, Ann. Cas. 1913A, 434). It appears unmistakably from the evidence that defendant's employees in charge of the train saw plaintiff when the train was distant about seventeen hundred feet from him. One, at least, of the defendant's employees saw that plaintiff was at work on the switch while the train was about a third of a mile away. Under these circumstances, and in view of the condition of the weather, we think it was the duty of those in charge of the train to sound the whistle or ring the bell: 2 Thompson on Negligence, § 1735; *Norfolk & W. R. Co.* v. *Earnest,* 229 U. S. 114, 118 (57 L. Ed. 1096, Ann. Cas. 1915C, 172, 33 Sup. Ct. Rep. 654); *Central R. Co.* v. *Colasurdo,* 192 Fed. 901, 902 (113 C. C. A. 379); *Louisville & N. R. Co.* v. *Johnson,* 161 Ky. 824 (171 S. W. 847, 849, 850); *Hardwick* v. *Wabash R. Co.,* 181 Mo. App. 156 (168 S. W. 328, 331). The defendant relies on this issue on *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 420 (36 L. Ed. 758, 12 Sup.

Ct. Rep. 835), and *Riccio* v. *New York etc. R. Co.,* 189 Mass. 358 (75 N. E. 704); 19 American Negligence Reports, 277. The accidents involved in these two cases occurred in railway yards at Detroit, Michigan, and New Haven, Connecticut, respectively. Both were places where trains were constantly moving and Mr. Justice Brewer, in the first of these cases, says:

"The ringing of bells and the sounding of whistles of trains going and coming and switch-engines moving forwards and backwards would have simply tended to confusion."

The situation was manifestly different in the sparsely settled section of this state where plaintiff was hurt.

4. It is true, as contended by the defendant, that negligence cannot be predicated on the failure to sound the whistle or ring the bell if, notwithstanding such failure, the party to be warned knew of the approach of the train in time to save himself: *St. Louis I. M. & S. R. Co.* v. *Gibson* (Okl.), 150 Pac. 465. The jury in the case at bar was entitled to infer that plaintiff had no knowledge of the approach of the train prior to the accident. We think it is clear that plaintiff made out a case on the subject of the defendant's negligence sufficient to be submitted to the jury.

5. The defendant's argument in support of its contention that plaintiff was guilty of contributory negligence is a strong one and is supported by many authorities, but this contention cannot avail the defendant on this appeal. It is charged in the complaint and admitted by the answer that the track, on which plaintiff was working, was used by the defendant in interstate commerce. This circumstance brings plaintiff within the protection of the act of Congress approved April 22, 1908; 35 Stat., pt. I, p. 65; *Pedersen*

v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 151, 152 (57 L. Ed. 1125, Ann. Cas. 1914C, 153, 33 Sup. Ct. Rep. 648); *Central R. Co.* v. *Colasurdo,* 192 Fed. 901, 903 (113 C. C. A. 379); *Southern Ry. Co.* v. *Smith,* 205 Fed. 360, 361 (123 C. C. A. 488); *Anest* v. *Columbia etc. R. Co.,* 89 Wash. 609 (154 Pac. 1100). It is expressly provided by Section 3 of this act that contributory negligence shall not bar a recovery but shall go only in mitigation of damages; *Chadwick* v. *Oregon-Wash. R. & N. Co.,* 74 Or. 19, 25, 26 (144 Pac. 1165); *Pfeiffer* v. *Oregon-Washington R. & N. Co.,* 74 Or. 307, 321 (144 Pac. 762); *Norfolk & W. R. Co.* v. *Earnest,* 229 U. S. 114, 120 (57 L. Ed. 1096, Ann. Cas. 1914C, 172, 33 Sup. Ct. Rep. 654).

The assignments of error on which the defendant relies involve only the right of plaintiff to maintain the action, and however clear the showing of contributory negligence on the part of the plaintiff, this showing would not bar his right of recovery.

6. The fourth section of the act of Congress above referred to provides that the employee:

"Shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The inference to be drawn from the statute is that the defense of assumption of risk is still available to the defendant in actions brought under the statute, except in the cases specifically inhibited by the language above quoted, and this accords with the construction given by the federal courts: *Connelley* v. *Pennsylvania R. Co.,* 201 Fed. 54 (47 L. R. A. (N. S.) 867, 119 C. C. A. 392), 228 Fed. 322 (142 C. C. A. 614); *Central R. Co.* v. *Colasurdo,* 192 Fed. 901, 902 (113

C. C. A. 379); *McGovern* v. *Philadelphia & R. R. Co.,* 235 U. S. 389, 401, 402 (59 L. Ed. 283, 35 Sup. Ct. Rep. 127, 8 N. C. C. A. 67). Can it be said that plaintiff assumed the risk of injury by a train which gave no warning of its approach? The doctrine of assumption of risk has reference to a continuing dangerous condition of the place where the servant works or of the tools and appliances furnished him for his work. The doctrine is predicated on the knowledge of the servant and his presumed assent to the perilous conditions under which he is working: 18 R. C. L. 677, 678. As applied to the facts of this case, it may well be that plaintiff assumed the risk of being run down by trains of the defendant which were operated in the usual way.

If it had been shown that it was the custom of the defendant to operate its trains without giving warning to trackmen, it might well be argued that plaintiff in his fifteen months' service had received notice of this method of operating trains and assumed the risks incident thereto. But there is no evidence to that effect. Evidence offered as to the custom in the matter of sounding the whistle was excluded by the court on the defendant's objection. In the absence of such a showing plaintiff was entitled to depend upon the defendant to give warning of the approach of the train which injured him: 18 R. C. L. 712. This court has several times held that the servant does not assume risks of which he has neither knowledge nor notice: *Galvin* v. *Brown & McCabe,* 53 Or. 598, 611 (101 Pac. 671); *Richardson* v. *Klamath S. S. Co.,* 62 Or. 490, 496 (126 Pac. 24); *Pfeiffer* v. *Oregon-Washington R. & N. Co.,* 74 Or. 307, 319, 320, 326 (144 Pac. 762).

It cannot be held on this record that plaintiff as a matter of law assumed the risks incident to the oper-

ation of defendant's trains without the use of the whistle or the bell. Our conclusions in this respect are in harmony with those of the Supreme Court of the United States and of the Circuit Court of Appeals for the Second Circuit: *McGovern* v. *Philadelphia & R. R. Co.*, 235 U. S. 389, 401, 402 (59 L. Ed. 283, 35 Sup. Ct. Rep. 127, 8 N. C. C. A. 67); *Central R. Co.* v. *Colasurdo*, 192 Fed. 901, 902 (113 C. C. A. 379). The defendant relies on this question on *Connelley* v. *Pennsylvania Co.*, 201 Fed. 54 (47 L. R. A. (N. S.) 867, 119 C. C. A. 392), 228 Fed. 322 (142 C. C. A. 614). The accident out of which this case arose occurred just out of Broad Street Station, Philadelphia. Plaintiff's decedent at the time of the accident was at work on one of the many tracks of the Pennsylvania Railroad at a place where a locomotive was emitting steam. Trains were constantly passing and the position chosen by the deceased for doing his work was one of great and obvious peril. These circumstances differentiate that case from the case at bar.

We find no error and the judgment is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.